**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RICHARD L.,

                Plaintiff,

- v -                                 Civ. No. 6:17-CV-443
                                                     (LEK/DJS)

COMM'R OF SOC. SEC.,

                Defendant.

**APPEARANCES:**                                      **OF COUNSEL:**

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
Counsel for Plaintiff
300 S. State Street
Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         PRASHANT TAMASKAR, ESQ.
OFFICE OF REG'L GENERAL COUNSEL
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

      Currently before the Court, in this Social Security action filed by Richard L. against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt.

---

[1] Upon Plaintiff's declination of consent to a Magistrate Judge, this matter has been referred to the undersigned for a Report-Recommendation pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 72. *See* Dkt. No.5 & General Order 18.

Nos. 13 & 20. For the reasons set forth below, the Court recommends granting Plaintiff's Motion, denying Defendant's Motion, and remanding the matter for further proceedings.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff was born on October 24, 1963. Dkt. Nos. 9 & 9-1, Admin. Tr. ("Tr."), p. 104.[2] He completed high school and has completed a number of courses by attending Community College part time, and has past work as a chef. Tr. at pp. 129 & 1255. Plaintiff alleges a disability onset date of May 1, 2017, and his date last insured was September 30, 2010. Tr. at pp. 123 & 487. Plaintiff originally filed his claim for disability insurance benefits ("DIB") on December 17, 2008. Tr. at p. 62. Plaintiff listed chest wall hernia, asthma, anxiety, depression, and chronic obstructive pulmonary disorder ("COPD") as the illnesses, injuries, or conditions that limit his ability to work. Tr. at p. 128. Plaintiff's application for DIB was denied on March 9, 2009. Tr. at pp. 65-68. Plaintiff requested a hearing, which was first held before ALJ Marie Greener on June 7, 2010 and adjourned until September 9, 2010, when it was completed. Tr. at pp. 26-61. In her determination, ALJ Greener found Plaintiff was disabled from May 1, 2007 through November 30, 2008. Tr. at pp. 535-51. She found that during that time, Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 1567(a), except that the claimant could sit for substantially less than 6 hours in an 8-hour workday; was unable to sit for more than 1 hour at a time without having to stand up and move about or lie down due to pain; and should avoid concentrated exposure to dusts, fumes, odors, and other respiratory irritants." Tr. at p. 542. The ALJ found there

---

[2] Due to the length of the administrative transcript, it is contained in two docket entries, with consecutive bates stamp page numbering that continues between the two entries. As they contain consecutive page numbering, they will both be referred to as "Tr." herein, along with the corresponding bates stamped page number.

to be no jobs that existed in significant numbers in the national economy that Plaintiff could have performed, as "the claimant's ability to perform the full range of sedentary work has been significantly diminished by exertional and nonexertional limitations," such that "the evidence supports a finding that the claimant has had a substantial loss of ability to meet the physical demands of basic work-related activities on a sustained basis." Tr. at p. 544.

The ALJ found, however, that medical improvement occurred as of December 1, 2008, and that Plaintiff's disability thus ended on November 30, 2008. *Id.* The ALJ based this determination on "the objective medical evidence and the claimant's activities of daily living," in particular that "the severity of the claimant's chest wall hernia and history of fractured ribs significantly decreased" and that there was "no evidence of significant worsening of the claimant's Gastroesphoageal Reflux Disease ("GERD"), COPD, sleep apnea, obesity, and seasonal allergies." *Id.* After unsuccessfully appealing the determination to the Appeals Council, Plaintiff filed an action, and on March 20, 2014, the District Court remanded the matter. The District Court found that the ALJ had not complied with her affirmative duty to request medical source statements to develop the record; it found that without such analysis in the record, and by basing her determination only on medical records, the ALJ improperly substituted her own opinion for that of a physician. Tr. at pp. 519-30. The District Court therefore vacated the Commissioner's determination that Plaintiff was not disabled subsequent to December 1, 2008. Tr. at p. 530.

On remand, after holding a hearing on June 24, 2015, ALJ Greener explained that she had been unsuccessful at developing the record: "the claimant's treating physicians were asked to complete medical source statements. All failed to do so, but provided treatment records." Tr. at pp. 485-510 & 1132. As such, the record then contained additional treatment records, but no further

medical opinions. Her August 4, 2015 determination again found that Plaintiff was not disabled during the period beginning December 1, 2008. Tr. at p. 1135. She found that Plaintiff had the RFC to perform sedentary work with some limitations, including working indoors, "with the ability to change positions frequently from sitting to standing or walking, limiting each position to no more than 1 hour at a time, with the need to change positions for 5 to 10 minutes before resuming the position." Tr. at pp. 1135-36. Again, the ALJ found that "[t]he record does not provide any indication of worsening of his condition and his daily living activities . . . indicate an ability to enjoy various activities. . . . Treating sources have suggested retraining and never had made any indication that the claimant was thought to have become permanently disabled." Tr. at p. 1139. The ALJ found Plaintiff to not be disabled beginning December 1, 2008, considering his age, education, work experience, and RFC. Tr. at p. 1141. Plaintiff again brought this determination to the Court, and the parties stipulated to remand pursuant to sentence 4 of 42 U.S.C. § 405(g). Tr. at pp. 1148-49. The matter was remanded, and after holding a hearing on November 14, 2016, ALJ Elizabeth W. Koennecke issued a determination dated February 16, 2017. Tr. at pp. 1101-27 & 1074-91.

### B. The ALJ's Decision

In the determination at issue, ALJ Koennecke outlines the steps that she took to develop the record. She instructed Plaintiff's representative to recontact Plaintiff's physicians to obtain medical source statements, and to follow up with those physicians if no response was received. Tr. at pp. 1076 & 1085-86. Plaintiff's representative complied, but did not receive the substantive opinion evidence requested. Tr. at p. 1076. In addition, ALJ Koennecke describes that the previous ALJ requested medical source statements from these individuals and did not obtain the assessments requested. Tr. at p. 1085.

The ALJ found that Plaintiff had a date last insured of September 30, 2010. Tr. at p. 1079. She further found that Plaintiff did not engage in substantial gainful activity between December 1, 2008 and September 30, 2010. *Id.* The ALJ found that during the period at issue, Plaintiff had "the following severe impairments: chest wall hernia, history of fractured ribs, chronic obstructive pulmonary disease ("COPD") with chronic pleural thickening, sleep apnea, obesity, gastroesphoageal reflux disease ("GERD") with gastritis, and seasonal allergies." Tr. at p. 1079. The ALJ found these impairments did not meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Tr. at p. 1081. The ALJ found that Plaintiff had an RFC to perform sedentary work with some limitations. Tr. at p. 1082.

> Specifically, he had to work indoors in a climate-controlled environment with no concentrated exposure to dust or fumes; and with the ability to change positions frequently from standing or walking, limiting each position to no more than 1 hour at a time, with the need to change positions for 5 to 10 minutes before resuming the position.

*Id.*

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at p. 1084. In particular, the ALJ found that the treatment notes from Plaintiff's physicians belied his alleged inability to sleep and need to frequently change positions. *Id.* As in the previous determinations, the ALJ focused on Plaintiff's physician's analysis that opined that Plaintiff could not work in a physically demanding job; from this, the ALJ infers that the physician believed Plaintiff could perform other work. Tr. at pp. 1085 & 1087 (giving "great weight to Dr. Kramer's suggestion that the claimant should receive retraining in so far as this

statement suggests that the claimant retains the ability to perform work at some level of exertion."). In addition, the ALJ found significant that after Dr. Zuckerman performed surgery on Plaintiff for a hernia, he discharged Plaintiff on an as needed basis and did not set any limitations on his functioning, and that there is no indication that Plaintiff returned to him. Tr. at p. 1085. Dr. Ramasamy provided a medical assessment in 2015, but the ALJ gave this assessment little weight because he was not a treating physician during the time period at issue, and because the ALJ found his diagnoses to be unsupported and his assessment to be contradicted by treating source statements during the period at issue. Tr. at p. 1086. The ALJ next found that, through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. at p. 1088. After considering Plaintiff's age, education, work experience, and RFC the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could have performed during the period at issue. *Id.* The vocational expert testified that Plaintiff could perform the requirements of representative occupations such as Order Clerk Food/Beverage, Charge Account Clerk, and Document Preparer, and that the job of Order Clerk Food/Beverage could accommodate a sit/stand option without eroding the number of jobs. Tr. at p. 1089. The ALJ found there to be no evidentiary basis for the additional limitations posed by Plaintiff's attorney to the vocational expert, and found that Plaintiff was not under a disability from December 1, 2008 through September 30, 2010. Tr. at p. 1091.

### C. The Parties' Briefings on Their Cross-Motions

In his brief, Plaintiff contends that the ALJ failed to meet her burden of proof because she failed to make a finding of medical improvement after November 30, 2008. Dkt. No. 13, Pl.'s Mem. of Law, pp. 17-19. Plaintiff contends that, because Plaintiff was found to be disabled for a period, the ALJ was required to make a finding of medical improvement to find him not disabled; in

addition, Plaintiff contends that the evidence demonstrates that he in fact did not improve. *Id.* at pp. 17-19. Plaintiff further contends that the ALJ's RFC determination was not supported by substantial evidence because she did not perform a function by function analysis, and because she improperly rejected Plaintiff's allegations of disabling limitations. *Id.* at pp. 20-25. In his conclusion, Plaintiff argues that because this case has already been remanded twice, and further evidence related to the relevant period is unlikely to be obtainable, the Court should remand for calculation of benefits. *Id.* at p. 25.

In response, Defendant first contends that the ALJ was not required to make a finding of medical improvement because that analysis is only required for continuing disability reviews. Dkt. No. 20, Def.'s Mem. of Law, pp. 5-6. Defendant contends that, in any event, any failure to perform a medical improvement analysis did not alter the determination because substantial evidence supports the RFC and the finding that Plaintiff was not disabled during the period at issue. *Id.* at pp. 6-9. Finally, Defendant contends that the ALJ performed an appropriate credibility analysis. *Id.* at pp. 9-11.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The

Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

Where a claimant has already been found to be disabled, an ALJ must follow an eight-step process for determining whether the claimant's conditions remain disabling. *See* 20 C.F.R. § 404.1594. These steps are as follow:

> First, the ALJ must determine if the claimant is engaging is substantial gainful activity that would result in a finding that the claimant's disability has ended. 20 C.F.R. § 404.1594(f)(1). Second, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, App. I. 20 C.F.R. § 404.1594(f)(2). Third, the ALJ must determine if there has been medical improvement shown by a decrease in medical severity. 20 C.F.R. § 404.1594(f)(3). Fourth, the ALJ must determine whether the medical improvement is related to the claimant's ability to do work, such as whether there has been an increase in the RFC that was present at the time of the most recent favorable medical determination. 20 C.F.R. § 404.1594(f)(4). If no medical improvement is found or if medical improvement is not related to the

ability to work, the ALJ must still determine if claimant's case meets any of the exceptions listed in the regulation. 20 C.F.R. § 404.1594(f)(5). Fifth, if the ALJ finds medical improvement that affects the ability to work or that any of the listed exceptions are present, the ALJ must determine whether the claimant's impairment or combination of impairments is severe. 20 C.F.R. § 404.1594(f)(6). Sixth, if an impairment or combination of impairments is severe, the ALJ must assess the claimant's current ability to do substantial gainful activity by assessing the claimant's RFC. 20 C.F.R. § 404.1594(f)(7). Seventh, the ALJ must determine whether the claimant has past relevant work and, if so, whether the claimant can perform such work with the limitations in the RFC. 20 C.F.R. § 404.1594(f)(8). Eighth, and finally, if there is no past relevant work that the claimant can perform, the ALJ must determine whether the claimant can adjust to other work based on her age, education, and RFC. 20 C.F.R. § 404.1594(f)(9).

*Genito v. Comm'r of Soc. Sec.*, 2017 WL 1318002, at *4 (N.D.N.Y. Apr. 7, 2017).

### III. ANALYSIS

#### A. The ALJ's Obligation to Make a Finding of Medical Improvement

Plaintiff first contends that an ALJ is required to make a finding of improvement after a favorable decision, finding that the claimant's condition has improved and that he can now perform work. Pl.'s Mem. of Law at pp. 17-19. This contention is based on 20 C.F.R. 404.1594, which provides:

> [I]f you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically. . . . there are a number of factors we consider in deciding whether your disability continues. We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work.

20 C.F.R. 404.1594(a). The language of this regulation clearly applies to reevaluating a disability for which no end date was established, with the possibility of terminating those benefits. However, a number of courts have determined that this analysis applies to initial eligibility determinations as well, and that an ALJ must make a finding of improvement when a claimant is found to be disabled for a closed period of time. *Deronde v. Astrue*, 2013 WL 869489, *2-3 (N.D.N.Y. Feb. 11, 2013)

(collecting cases from a number of circuit courts finding that the continued disability review standard is to be applied in closed periods as well as indefinite ones); *Chavis v. Astrue*, 2010 WL 624039 (N.D.N.Y. Feb. 18, 2010) (Kahn, J., adopting Report-Recommendation) (noting that the "overwhelming" majority of courts have held that the medical improvement standard applies to closed period disability cases). Social Security Administration guidance provides the same. *See* SOCIAL SECURITY ADMINISTRATION, *Program Operations Manual System (POMS)*, *DI 28005.001 Legal Standard for Determining if Disability Continues*, available at https://secure.ssa.gov/poms.nsf/lnx/0428005001#d (June 3, 2015) ("[Medical Improvement Review Standard] applies in the following cases: . . . The part of the determination or decision that finds that disability ended in all closed period determinations"). Thus, the ALJ must make a finding of medical improvement in order to find that a claimant is disabled for only a portion of a claimed period.

"Once a claimant establishes the existence of a disabling condition, the medical improvement standard shifts the burden of proof to the Commissioner; a claimant is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change." *Carbone v. Astrue*, 2010 WL 3398960, *12 (E.D.N.Y. Aug. 26, 2010); *De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984) (finding that medical improvement analysis was insufficient where the evidence only indicated one medical difference from the time when the plaintiff was granted benefits, and, aside from noting the plaintiff's testimony that his epilepsy was under control, "[t]here was absolutely no further comparison between [the plaintiff]'s condition at the time he was initially found to be disabled and his condition at the time of the hearing below. .

. . Clearly, this comparison of evidence was grossly inadequate and does not provide substantial support for finding the requisite medical improvement.").

Here, the ALJ made no medical improvement analysis. Upon finding Plaintiff was not engaging in substantial gainful activity and his impairments did not meet or medically equal a listed impairment, the ALJ was required to determine whether there had been a medical improvement, meaning "any decrease in the medical severity of [ ] impairment(s) which was present at the time of the most recent favorable medical decision . . . based on improvement in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s)." *See* 20 C.F.R. §§ 404.1594(f)(3) & 404.1594(b)(1). An articulation that the claimant's condition has changed is necessary. *Rodriguez v. Colvin*, 2016 WL 447715, at *2 (N.D.N.Y. Feb. 4, 2016) (quoting 20 C.F.R. § 404.1594(b)(1)).

It is possible for an ALJ's findings to be sufficient where he or she fails to make an explicit medical improvement finding, but provides an analysis with "enough information to enable th[e] court to determine whether she made the requisite findings." *Crowell v. Astrue*, 2010 WL 7765355 (S.D.N.Y. July 23, 2010). Here, the ALJ did not make an explicit finding of medical improvement; nor did she point to changes in Plaintiff's conditions that would allow a court to determine that she had in fact found that there had been improvement from the period during which he had been found disabled.

### B. Whether the RFC is Supported by Substantial Evidence

Defendant contends that, even if the ALJ was required to make a medical improvement finding, the failure to do so was harmless because there was substantial evidence to support the ALJ's determination. Def.'s Mem. of Law at pp. 6-8. Plaintiff, on the other hand, contends that the

RFC determination is not supported by substantial evidence because the ALJ failed to perform a function-by-function analysis and improperly rejected Plaintiff's allegations of disabling limitations. Pl.'s Mem. of Law at pp. 20-25.

The RFC determination was not supported by substantial evidence. On review of the first determination made by ALJ Marie Greener on October 28, 2010, the District Court explained that:

> It is hard to imagine how the ALJ could have properly reached her RFC determination in the absence of any medically acceptable assessment of [Claimant]'s limitations. While the ALJ accorded "great weight" to the records of Dr. Kramer in reaching her conclusion, those records do not provide enough information to make a proper RFC determination. As the Commissioner correctly notes, Dr. Kramer observed that plaintiff intended to re-train for work that was not "physically demanding" in February of 2009, that there was "less bulging on his side than in previous visits in October 2009, and that his progress notes "do not reflect a worsening in clinical signs and findings." However, these progress notes lack any specificity concerning the scope of plaintiff's work-related capabilities and therefore cannot provide a proper basis for the ALJ's finding that plaintiff could perform sedentary work with environmental limitations.

Tr. at pp. 528-29 (internal citations omitted). ALJ Koennecke's RFC determination is flawed for the same reasons.

Here, the ALJ continues to rely on the same evidence as relied upon in the previous determinations. While there is now more evidence in the record, it is largely of the same character as the evidence the previous ALJ relied upon, *i.e.*, medical records and not medical opinion of Plaintiff's functional capacity. *See* Tr. at p. 529 (citing *Felder v. Astrue*, 2012 WL 3993594, *13 (E.D.N.Y. Sept. 11, 2012) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.")). The ALJ gave limited weight to Dr. Ramasamy's opinion that provided a functional analysis, and otherwise

extrapolates from treatment records; she does not give any weight to any other functional analyses. Tr. at pp. 1082-87.

"The record must have more than mere medical findings: [A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. July 20, 2016) (internal quotation marks omitted). Where impairments are relatively simple and mild, an ALJ may be able to "render a common sense judgment about functional capacity even without a physician's assessment;" however, where there is "a relatively high degree of impairment," an ALJ is "unqualified to assess residual functional capacity." *Barnes v. Berryhill*, 2018 WL 1225542, \*4 (D. Conn. Mar. 9, 2018).

Here, the ALJ's determination of Plaintiff's RFC without relying on medical analysis as to his functional limitations was error. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 432-33 (S.D.N.Y. 2010) ("The absence of medical evidence on the question of sitting capacity renders [the ALJ's] conclusion that she can sit for six hours of an eight-hour day wholly unsupported by evidence."); *Walker v. Astrue*, 2010 WL 2629832, at \*10-11 (W.D.N.Y. June 11, 2010) ("Without this additional medical evidence [the ALJ], as a layperson, could not bridge the gap between plaintiff's [impairments] and the functional limitations that flow from these impairments."); *Urban v. Berryhill*, 2017 WL 1289587, \*3 (W.D.N.Y. Apr. 7, 2017). This is not a case where Plaintiff's impairments are rather mild and straightforward; instead, Plaintiff has a range of different

impairments with complex histories. *See Walker v. Astrue*, 2010 WL 2629832, at *7; *Mills v. Astrue*, 2012 WL 6681685, *4 (N.D.N.Y. Dec. 21, 2012) ("Because there is no medical source opinion supporting the ALJ's finding that [the plaintiff] can perform 'light work' with additional exertional restrictions, the court concludes that the ALJ's RFC determination is without substantial support in the record."). The ALJ went beyond her authority in determining Plaintiff's functional limitations based on raw medical records.

As such, the RFC analysis is not supported by substantial evidence, and the Court recommends granting Plaintiff's Motion on this basis as well.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 20) be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff DIB benefits be **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**SO ORDERED**.

Date: June 26, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).